UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**Arandell Corporation**, *et al.*,

    **Plaintiffs**,

-v-

**American Electric Power Company, Inc. and AEP Energy Services, Inc.**,

    **Defendants.**

Case No. 2:09-cv-231

Judge Michael H. Watson

## OPINION AND ORDER

This is a putative class action brought by Plaintiffs Arandell Corporation, Ladish Company, Inc., Merrick's, Inc., Sargento Foods, Inc., Briggs & Stratton Corporation, and Carthage College (collectively, "Plaintiffs") under the Wisconsin Antitrust Act, specifically Wisconsin Statutes ("Wis. Stat(s).") §§ 133.14 and 133.18, Wisconsin's "Full Consideration Antitrust Statute" and "Treble Damages Antitrust Statute" respectively. Plaintiffs allege two counts: Count One seeks to void certain contracts purportedly affected by the alleged conspiracy and to recover the "full consideration" paid under such contracts, pursuant to Wis. Stat. § 133.14, and; Count Two seeks treble damages for the purported injuries arising from the alleged conspiracy, pursuant to Wis. Stat. § 133.18. (*See* Compl. ¶¶ 17, 119–29.)

The matter is currently before the Court on Defendants American Electric Power Company, Inc. ("AEP") and AEP Energy Services, Inc.'s ("AEPES") (collectively

"Defendants") Motion to Dismiss Complaint as Barred by Statute of Limitations (Doc. 4).

For the following reasons, the Court **GRANTS** Defendants' Motion to Dismiss (Doc. 4).

## I. BACKGROUND

### A. Parties and jurisdiction

Plaintiffs Arandell Corporation, Ladish Company, Inc., Merrick's, Inc., Sargento Foods Inc., Briggs & Stratton Corporation, and Carthage College are individually each corporations or institutions existing under the laws of the State of Wisconsin. Plaintiffs bring this class action on behalf of themselves and "a class consisting of all industrial and commercial purchasers of natural gas for their own use or consumption between January 1, 2000 and October 31, 2002 (the "relevant time period"), and which gas was used or consumed by them in Wisconsin." (Compl. ¶ 1.) Plaintiffs claim Defendants engaged in a conspiracy which resulted in elevated prices for natural gas in Wisconsin, and Plaintiffs seek to recover treble damages under the Wisconsin Antitrust Act. Wis. Stat. § 133.

Defendant AEP is a New York corporation with its principal place of business in Columbus, Ohio. Defendant AEPES is an Ohio corporation with its principal place of business in Columbus, Ohio. AEP is a holding company, and AEPES is AEP's subsidiary.

In the Complaint, Plaintiffs list several alleged co-conspirators (collectively, "co-conspirators") operating in the purchase, sale, transport and/or storage of natural gas in Wisconsin that allegedly conspired or combined with Defendants and others to prevent

free competition and to elevate and control the market prices of natural gas. (*See, e.g.*, Compl. ¶¶ 31, 36.) Although none of the co-conspirators are included as parties to this action, the co-conspirators detailed in the Complaint are as follows: The ONEOK Entities, The Williams Entities, The Duke Entities, The Dynegy Entities, The El Paso Entities, The CMS Entities, The Reliant Entities, Coral Energy Resources, L.P., and The Xcel Entities. (*Id.* at ¶¶ 30–90.)

The Court's jurisdiction is based solely on diversity of citizenship pursuant to 28 U.S.C. § 1332 because the parties are diverse entities of different states and the amount in controversy exceeds $75,000.

## B. Factual allegations[1]

Wisconsin generates no natural gas; all natural gas consumed in Wisconsin is produced elsewhere. Natural gas is a primary energy source in Wisconsin for major Wisconsin industries such as food processing, brewing and dairy processing, and metal working.

Plaintiffs allege that during the relevant time period, Defendants conspired to manipulate natural gas prices. Specifically, Plaintiffs allege Defendants, either directly or through their affiliates, engaged in wash sales and manipulated market indices by reporting false trading information.[2] (Compl. ¶ 23.) In furtherance of this scheme, traders allegedly adjusted the prices and volumes of trades and reported trades that

---

[1] The following facts are taken from the Complaint (Doc. 1).

[2] A wash sale is an agreement in which two companies sell each other the same amount of natural gas at the same prices, creating the illusion of higher demand for natural gas and higher volumes of sales. (*See* Compl. ¶ 102 (a).) Wash trades are illegal.

never occurred. (*Id.*) Plaintiffs allege Defendants and co-conspirators fraudulently participated together to increase the retail price of natural gas paid by Wisconsin commercial entities. (*Id.* at ¶ 91.)

In the scheme alleged, traders overstated natural gas prices to reporting firms, which in turn, published price data incorporating the overstated prices. Specifically, Plaintiffs allege Defendants and co-conspirators were in constant communication about natural gas futures contracts and the spot price of natural gas. (*Id.* at ¶ 93.) This scheme allegedly caused price instability and increased volatility in spot prices resulting in manipulated prices of natural gas futures. (*Id.* at ¶ 95.)

For example, in September 2002, five traders and their companies, including Defendants AEP and AEPES, and co-conspirators El Paso Merchant Energy, L.P., Williams Energy & Trading, CMS Energy, and Dynegy Marketing & Trade, admitted to providing falsified information to *Gas Daily* and *Inside FERC*, trade publications owned by Platts devoted to the natural gas industry, natural gas indexes, and reporting of natural gas market prices and volumes.[3] (*Id.* at ¶ 92.) It is alleged that this behavior

---

[3]According to Platts' website:

Platts is the leading global provider of energy and metals information and the world's foremost source of benchmark price assessments in the physical energy markets.

* * *

Platts publishes news, research, commentary, market data and analysis, and more than 8,500 daily price assessments that are widely used as benchmarks in both physical and futures markets. It delivers real-time news and price information and end-of-day price data directly to clients' desktops; publishes more than 60 newsletters and reports; and produces over 50 sector-specific conferences every year.

http://www.platts.com/AboutPlattsHome.aspx (Visited Sept. 10, 2010).

artificially inflated prices for natural gas, resulting in Wisconsin and other states' commercial entities paying inflated prices for natural gas. (*Id.*)

Based on such schemes, Defendants and co-conspirators paid millions of dollars in civil penalties to the United States Commodity Futures Trading Commission, and/or the Department of Justice. (*See, e.g., id.* at ¶¶ 28, 34, 43, 52, and 63.)

## C. Procedural history

Plaintiffs initially filed claims against AEP and AEPES in Wisconsin state court in December 2006. *See Arandell Corp., v. Xcel Energy Inc.*, No. 06CV4276 (Wis. Cir. Ct. Dane County Dec. 15, 2006) (the "Wisconsin Action"). In addition to AEP and AEPES, the Wisconsin Action included several defendants including many of the co-conspirators alleged in this case's Complaint. That case was removed from Wisconsin state court to the United States District Court for the Western District of Wisconsin on February 9, 2007. *See Arandell Corp., et al. v. Xcel Energy, Inc., et al.*, No. 3:07–cv–76 (Notice of Removal (Doc. 2)) (W.D. Wisc. Feb. 9, 2007). Subsequently, on March 22, 2007, AEP and AEPES moved to dismiss for lack of personal jurisdiction. *See Arandell Corp., et al. v. Xcel Energy, Inc., et al.*, No. 3:07–cv–76 (Defs.' AEP and AEPES Mot. to Dismiss for Lack of Personal Jurisdiction (Doc. 61)) (W.D. Wisc. March 22, 2007).

On June 25, 2007, the case in the Western District of Wisconsin was consolidated by order of the Judicial Panel on Multidistrict Litigation in a multidistrict litigation ("MDL") in district court in Nevada. *See In re W. States Wholesale Natural Gas Antitrust Litig.*, No. 2:03–cv–1431 (Transfer Order to MDL No. 1566 (Doc. 532)) (D. Nev. June 22, 2007). On March 9, 2009, the United States District Court for the District of Nevada (the "MDL court"), dismissed AEP and AEPES from the Wisconsin Action for

want of personal jurisdiction. See *In re W. States Wholesale Natural Gas Antitrust Litig.*, No. 2:03–cv–1431 (Order Granting Mot. to Dismiss for Lack of Jurisdiction (Doc. 1548)) (D. Nev. March 9, 2009). The MDL court found that AEP and AEPES never made a sale or delivery to the plaintiffs, and that the plaintiffs failed to demonstrate that any forum-related contact by AEP or AEPES with Wisconsin-based entities caused the harm to the plaintiffs. The MDL court found that the plaintiffs still would have been harmed in their transactions for natural gas purchases from the other defendants even if AEPES never made sales or deliveries to the third party Wisconsin-based entities. Accordingly, the MDL court found the plaintiffs failed to demonstrate their claims satisfied the personal jurisdiction test. *Id.* at 10.

After the dismissal by the MDL court, Plaintiffs filed their Complaint in this case in the Southern District of Ohio on March 25, 2009. *Arandell Corp. v. Am. Elec. Power Co., Inc. and AEP Energy Servs., Inc.*, Case No. 2:09–cv–231 (Compl. (Doc. 1)) (S.D. Ohio March 25, 2009).

## II. STANDARD OF REVIEW

A claim survives a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). In deciding whether a complaint has stated a claim on which relief can be granted, the Court will "construe the complaint in favor of the plaintiff, accept the allegations of the complaint as true, and determine whether plaintiff's factual allegations present plausible claims." *Bowman v. United States*, 564 F.3d 765, 769 (6th Cir. 2008). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer

possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949.

A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 546 (2007). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 129 S. Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007).

"Ordinarily, dismissing claims as untimely under Rule 12(b)(6) is disfavored because plaintiffs have no duty to plead facts negating an affirmative defense, such as the statute of limitations." *Owner Operator Indep. Drivers Ass'n, Inc. v. Comerica Bank*, 540 F. Supp. 2d 925, 929 (S.D. Ohio 2008) (citing *Hollander v. Brown*, 457 F.3d 688, 691 (7th Cir. 2006)). "However, . . . dismissal under Rule 12(b)(6) on the basis of a limitations defense may be appropriate when the plaintiff effectively pleads herself out of court by alleging facts that are sufficient to establish the defense." *Hollander*, 457 F.3d at 691; *Hoover v. Langston Equip. Assoc., Inc.*, 958 F.2d 742, 744 (6th Cir. 1992) (stating that a statute of limitations defense may be brought on a motion to dismiss when it is apparent from the face of the complaint that the time limit for bringing the claim has passed). Further, the plaintiff bears the burden of "plead[ing] circumstances which would indicate why the [cause of action] was not discovered earlier and which would indicate why the statute should be tolled." *Auslender v. Energy Mgmt. Corp.*, 832 F.2d 354, 356 (6th Cir. 1987).

## III. ANALYSIS

Defendants move to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) on the premise that relief is barred under any of the three potentially applicable statutes of limitations. Specifically, Defendants argue that under Ohio's one-year, Ohio's six-year, or Wisconsin's six-year statute of limitations, Plaintiffs' claims are time barred. Defendants assert that despite the invocation of Wisconsin Antitrust Laws, Ohio's statutes of limitations apply to claims brought in courts located in Ohio.

Plaintiffs assert that their claims are timely under any of the statutes of limitations. Plaintiffs also state that they have been pursuing their claims diligently and thus under the Wisconsin's tolling statute or Ohio's savings statute, Plaintiffs' claims will survive notwithstanding any expired statutes of limitations.

### A. Statute of limitations in a diversity case

Both parties rely upon either outdated cases or post-dated statutes in explaining the relevant statute of limitations. Accordingly, the Court will endeavor to clarify.

"[A] federal court sitting in diversity must apply the choice of law rules of the state in which it sits." *Charash v. Oberlin Coll.*, 14 F.3d 291, 296 (6th Cir. 1994) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). A federal court located in Ohio applies the procedural law of the forum state, including the statute of limitations of the forum state, even if the case requires application of another state's substantive law. *Charash*, 14 F.3d at 299 (citing *Howard v. Allen*, 30 Ohio St. 2d 130, 133 (1972)); *Schwartz v. Cincinnati Museum Ass'n*, 35 F. App'x 128, 131 (6th Cir. 2002); *Metz v. Unizan Bank*, 416 F. Supp. 2d 568, 573–74 (N.D. Ohio 2006) ("In Ohio, the statute of limitations of the forum state are applied even if liability is determined by the use of

another state's substantive law."). In *Sun Oil Co. v. Wortman*, the United States Supreme Court stated: "This Court has long and repeatedly held that the Constitution does not bar application of the forum State's statute of limitations to claims that in their substance are and must be governed by the law of a different state." 486 U.S. 717, 722 (1988).

As this Court is located in the Southern District of Ohio, the Court will apply the procedural law of Ohio, including the statutes of limitations of Ohio, even though the case is brought under Wisconsin Antitrust laws.

"The Ohio Supreme Court has adopted the Restatement (Second) of Conflict of Laws ["Restatement"] as the governing law for Ohio conflicts issues." *Cole v. Mileti*, 133 F.3d 433, 437 (6th Cir. 1998) (citations omitted); RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 142 (1971). Although other courts in this district found that Ohio courts would adopt the 1988 Revision (the "Revision") to the 1972 Restatement, *see Curl v. Greenlee Textron, Inc.*, 404 F. Supp. 2d 1001, 1005–08 (S.D. Ohio 2005), the Court need not opine on this matter as it is inconsequential to the outcome. Under either the Restatement or the Revision, a claim will be dismissed if the forum state's statute of limitations bars the claim.

> The Restatement states:
>
> (1) An action will not be maintained if it is barred by the statute of limitations of the forum, including a provision borrowing the statute of limitations of another state.
>
> (2) An action will be maintained if it is not barred by the statute of limitations of the forum, even though it would be barred by the statute of limitations of another state . . . .

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 142 (1971).

>The Revision states:
>
>Whether a claim will be maintained against the defense of the statute of limitations is determined under the principles stated in § 6. In general, unless the exceptional circumstances of the case make such a result unreasonable:
>
>(1) The forum will apply its own statute of limitations barring the claim.
>
>(2) The forum will apply its own statute of limitations permitting the claim unless:
>
>>(a) maintenance of the claim would serve no substantial interest of the forum; and
>>(b) the claim would be barred under the statute of limitations of a state having a more significant relationship to the parties and the occurrence.

RESTATEMENT § 142 REVISION (1988).

Plaintiffs rely on two Sixth Circuit decisions for the proposition that when the substantive law of another state is to be used, if "the statute creating a cause of action also fixes a limitation of time in which an action may be brought, the limitation is regarded as part of the substantive law of the cause of action and is controlling when brought in a sister state." (Pls.' Opp'n to Defs.' Mot. to Dismiss (Doc. 16) at 6–8) (citing *Myers v. Alvey-Ferguson Co.*, 331 F.2d 223, 224 (6th Cir. 1964) (interpreting Ohio law as to whether statutes of limitations should be regarded as "substantive" law for choice of law analysis); *Davis v. Drackett Prods. Co.*, 536 F. Supp. 694, 696 (S.D. Ohio 1982)).)

Notably, the 1964 and 1982 decisions focus on when a statute of limitations should be regarded as "substantive law" during a choice-of-law analysis; however, the Supreme Court of Ohio abandoned the substantive/procedural dichotomy over twenty years ago. *See, e.g., Curl*, 404 F. Supp. 2d at 1005. Prior to the 1980s, Ohio courts traditionally applied the "substance/procedure dichotomy" in which the substantive law of

the place of the injury and the procedural law of the forum were applied in choice of law cases. See *Phelps v. McClellan*, 30 F.3d 658, 661 (6th Cir. 1994). As these rigid rules, however, "have gradually fallen out of favor in Ohio and elsewhere," the Supreme Court of Ohio formally adopted the more flexible approach by adopting the Restatement of the Law of Conflicts to preclude forum shopping arising from the use of the substantive/procedural dichotomy. *Morgan v. Biro Mfg. Co.*, 15 Ohio St. 3d 339, 341–42 (1984) ("[w]e hereby adopt the theory stated in the Restatement of the Law of Conflicts"); *Phelps*, 30 F.3d at 661. Accordingly, the Court declines Plaintiffs' request to employ the six-year statute of limitations provided for in the Wisconsin Antitrust Act.

Likewise, Defendants err in suggesting the Court must employ Ohio's borrowing statute in this case. (Defs.' Br. 4.) Defendants argue that Ohio's borrowing statute bars the civil action because the statute of limitations is not met in both Ohio and Wisconsin.

Ohio's borrowing statute reads as follows:

> (B) No civil action that is based upon a cause of action that accrued in any other state, territory, district, or foreign jurisdiction may be commenced and maintained in this state if the period of limitation that applies to that action under the laws of that other state, territory, district, or foreign jurisdiction has expired or the period of limitation that applies to that action under the laws of this state has expired.

OHIO REV. CODE § 2305.03(B). Defendants' reliance on Ohio's borrowing statute, however, is misplaced. The borrowing statute codified at Ohio Rev. Code § 2305.03 was enacted on April 7, 2005, after the alleged injury accrued during the relevant time period, but before the case was filed. At least two district courts in Ohio have denied retroactive application of Ohio's borrowing statute and declined to apply it to claims that accrued before the statute was enacted. See *Executone of Columbus, Inc. v. Inter-Tel*,

*Inc.*, Case No. 2:06–cv–126, 2009 WL 3210354, at *15–16 (S.D. Ohio Sept. 30, 2009) (Smith, J.); *Dudek v. Thomas and Thomas Attorneys & Counselors at Law, LLC*, 702 F. Supp. 2d 826, 835–40 (N.D. Ohio March 22, 2010) (O'Malley, J.). As the face of the Complaint provides that the claims accrued before the borrowing statute was enacted in 2005, the Court declines to apply Ohio's borrowing statute retroactively. *See State v. LaSalle*, 96 Ohio St. 3d 178, 181 (2002) ("[A]bsent a clear pronouncement by the General Assembly that a statute is to be applied retrospectively, a statute may be applied prospectively only.").

In sum, the Court will apply the statutes of limitations of Ohio and determine whether Plaintiffs claims are barred by Ohio's statutes of limitations even if liability is determined by the use of Wisconsin's substantive law.

## B. Ohio's statutes of limitations

The Ohio Rev. Code supplies two statutes of limitations for claims premised on statutory violations. An action based "upon a statute for a penalty or forfeiture" must be brought within one year. OHIO REV. CODE § 2305.11. An action based "upon a liability created by statute other than a forfeiture or penalty" must be brought within six years. OHIO REV. CODE § 2305.07.

Defendants argue that because Plaintiffs' claims are barred by both the one-year and six-year Ohio statutes of limitations, the Court need not decide which of Ohio's statutes of limitations apply to Plaintiffs' claims. *See* OHIO REV. CODE §§ 2305.07, 2305.11. Defendants aver that even under the longer six-year statute of limitations Plaintiffs' claims are barred because Plaintiffs allege the relevant time period for the antitrust violations occurred between January 1, 2000 and October 31, 2002. (Compl. ¶

1.) Defendants reason that Plaintiffs filed their Complaint in this case on March 25, 2009, after the alleged October 31, 2008 expiration of the six-year statute of limitations. Defendants further posit that no discovery rule that would toll the statute of limitations applies to Plaintiffs' claims and that Plaintiffs fail to allege any facts in their Complaint about the reason for delay in discovering their claims. (Defs.' Br. 6.)

Plaintiffs argue a discovery rule does apply, asserting that because the Wisconsin Antitrust Act itself codifies a discovery rule, it shows the Wisconsin legislature intended the discovery rule to apply. Plaintiffs state that "to determine whether a discovery rule should apply in a particular instance, a court should review the statutory scheme to determine whether the legislature meant for the accrual of the statute of limitations to occur upon the discovery of the facts giving rise to the cause of action." (Pls.' Opp'n to Defs.' Mot. to Dismiss (Doc. 16) 12.)

### 1. Ohio's six-year statute of limitations

Defendants argue Plaintiffs' claims are barred under Ohio's six-year statute of limitations. Defendants argue the claims accrued more than six years prior to the filing of the Complaint and Ohio does not recognize a discovery rule tolling the statute of limitations. Defendants further assert that even applying a discovery rule, Plaintiffs' Complaint claims Defendants' illegal behavior became public in October 2002.

Plaintiffs argue that under Ohio's six-year statute of limitations, it is left to judicial determination when a cause of action accrues. Plaintiffs argue as a discovery rule is part of the statutory scheme of the Wisconsin Antitrust Act, the discovery rule thus tolls the statute of limitations in this case.

Ohio law provides that "an action . . . upon a liability created by statute other than

a forfeiture or penalty, shall be brought within six years after the cause thereof accrued." OHIO REV. CODE § 2305.07. When determining when a cause of action accrues, "[a]bsent legislative definition, it is left to the judiciary to determine when a cause 'arose' for purposes of statutes of limitations." *Metz*, 416 F. Supp. 2d at 575 (citing *O'Stricker v. Jim Walter Corp.*, 4 Ohio St. 3d 84 syllabus ¶ 1 (1983)). In Ohio, the "general rule [is] that the statute of limitations commences to run at the time the cause of action accrues . . . . The cause of action accrues . . . in the case of statutory actions *when the violation of the statute occurs.*" *Arbor Vill. Condo. Ass'n v. Arbor Vill. Ltd., L.P.*, 95 Ohio App. 3d 499, 506 (Ohio Ct. App. Dist. 10 1994) (emphasis added) (citing *Squire v. Guardian Trust Co.*, 79 Ohio App. 371 (Ohio Ct. App. Dist. 8 1947)). In this case, the Complaint alleges the relevant time period for the statutory violations to be no later than October 2002. Accordingly, on the face of the Complaint, the Court finds the violation of the statute occurred more than six years prior to the filing of the instant action.

Plaintiffs, however, argue that despite the statutory violation occurring at latest in October 2002, they did not discover the violation until less than six years before the filing of this action. Plaintiffs suggest the discovery rule codified in the Wisconsin Antitrust Act tolls Ohio's six-year statute of limitations.

In some instances, a discovery rule is applied to toll a statute of limitations. A "'discovery rule' generally provides that a cause of action accrues for purposes of the governing statute of limitations at the time when the plaintiff discovers or, in the exercise of reasonable care, should have discovered the complained of injury." *Investors REIT One v. Jacobs*, 46 Ohio St. 3d 176, 179 (1989).

Plaintiffs suggest this Court should apply the discovery rule codified within the Wisconsin Treble Damages statute: "A cause of action arising under this chapter does not accrue until the discovery, by the aggrieved person, of the facts constituting the cause of action." Wis. Stat. § 133.18(4). Plaintiffs cite to *Metz* for the proposition that "[t]he Court also considers the legislature's intent when determining whether a statute of limitations should be extended through the application of a discovery rule." *Metz*, 416 F. Supp. 2d at 576. That case, however, is inapposite in that it is not considering whether a discovery rule codified by the legislature of a foreign state can be used to extend the statute of limitations of a forum state. Notably, Plaintiffs offer no such authority. The Court declines to adopt Plaintiffs' request to apply the discovery rule of the Wisconsin statute to the Ohio statute of limitations. By doing so, it would effectively make Ohio's statute of limitation of no moment and would require a forum state to accept a claim permitted in a foreign state while barred by its own statute of limitations.

Instead the Court looks to whether Ohio Rev. Code § 2305.07 contemplates a discovery rule. In *Arbor Village*, the court refused to apply a discovery rule to a claim invoking the six-year statute of limitations in Ohio Rev. Code § 2305.07. *Arbor Vill.*, 95 Ohio App. 3d at 506. The *Arbor Village* court found no reason to depart from the rule that for statutory actions, the statute of limitations begins to run when the violation of the statute occurs. *Id. See also Settles v. Overpeck Trucking Co.*, 1993 WL 534700, *1 (Ohio Ct. App. Dist. 12 1993) (interpreting Ohio Rev. Code § 2305.07, the court found "[t]here is no case law to support plaintiff's argument that the discovery rule . . . extends to breach of contract claims."). Accordingly, the Court finds a discovery rule should not

be applied to the six-year statute of limitations provided under Ohio Rev. Code § 2305.07.

In sum, it is apparent from the face of the Complaint that Plaintiffs' claims are untimely under the six-year statute of limitations pursuant to Ohio Rev. Code § 2305.07.

### 2. Ohio's one-year statute of limitations

Defendants also assert Plaintiffs' claims are barred under Ohio's one-year statute of limitations for "an action upon a statute for a penalty or forfeiture . . . ." OHIO REV. CODE § 2305.11.

Plaintiffs concede that if Ohio's statutes of limitations apply, the six-year statute of limitations and not the one-year statute of limitation applies. (See Pls.' Opp'n to Defs.' Mot. to Dismiss (Doc. 16) 2.)

Accordingly, as Plaintiffs waived arguments regarding the one-year statute of limitations, the Court declines to decide whether the one-year statute of limitations would apply.

### C. Tolling provisions

Defendants argue no tolling provision applies to Plaintiffs' claims. Defendants assert that despite Plaintiffs' filing of a suit in Wisconsin, bringing claims in the wrong court does not entitle Plaintiffs to an enlargement of the statute of limitations in this action.

Plaintiffs concede that they have "never argued that the doctrine of equitable tolling applies" (Pls.' Opp'n to Defs.' Mot. To Dismiss (Doc. 16) 16) and the Court so finds. Instead Plaintiffs assert Wisconsin's tolling statute saves their claims, or, in the

alternative, Ohio's saving statute preserves their claims. See OHIO REV. CODE § 2305.19.

> Wisconsin's tolling statute states:
>
> A law limiting the time for commencement of an action is tolled by the commencement of the action to enforce the cause of action to which the period of limitation applies. The law limiting the time for commencement of the action is tolled for the period from the commencement of the action until the final disposition of the action.

Wis. Stat. § 893.13. Plaintiffs, however, do not cite any authority that Wisconsin's tolling statute would apply to an action that was originally dismissed in a court that lacked jurisdiction or would apply to this action brought in a federal court in Ohio applying an Ohio statute of limitations. *Cf. Irvine v. Wisconsin Dept. of Transp.*, 118 Wis.2d 825, at *8 (Wis. App. 1984) (Interpreting Wis. Stat. § 893.13, the court held "[i]f an action is commenced in a court which lacks jurisdiction and then, after the statute of limitations has run, it is refiled in the proper court, the statute of limitations is not tolled by the initial improper filing.") (citing *Schafer v. Wegner*, 78 Wis.2d 127, 135 (1977); *Heifetz v. Johnson*, 61 Wis.2d 111, 117 (1973)). Accordingly, the Court declines to apply Wis. Stat. § 893.13's tolling statute to the current action.

> Similarly, Ohio's savings statute does not apply. It states:
>
> In any action that is commenced or attempted to be commenced, . . . if the plaintiff fails otherwise than upon the merits, the plaintiff . . . may commence a new action within one year after the date of . . . the plaintiff's failure otherwise than upon the merits or within the period of the original applicable statute of limitations, whichever occurs later.

OHIO REV. CODE § 2305.19(A). In *Howard v. Allen*, the Ohio Supreme Court held the Ohio saving clause applies only to actions "commenced or attempted to be commenced"

in Ohio within the appropriate statute of limitations. 30 Ohio St. 2d 130, 134–35 (Ohio 1972). That ruling, however, has been narrowly limited. In interpreting the Ohio savings statute, the Supreme Court of Ohio relied on two United States Supreme Court decisions and held "that the filing of a class action, whether in Ohio or the federal court system, tolls the statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action. We modify *Howard* to the extent that it conflicts with this holding." *Vaccariello v. Smith & Nephew Richards, Inc.*, 94 Ohio St. 3d 380, 382 (Ohio 2002) (relying on *American Pipe & Const. Co. v. Utah*, 414 U.S. 538, 554 ("[T]he commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action.") and *Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345, 352 (1983) (expanded the scope of *American Pipe* and found "a tolling rule for class actions is not inconsistent with the purposes served by statutes of limitations [which are] intended to put defendants on notice of adverse claims and to prevent plaintiffs from sleeping on their rights.")).

While *Vaccariello* allows the savings statute to save an individual member's claims when class certification fails, it does not speak to a putative class action originally filed in a foreign jurisdiction and dismissed for lack of personal jurisdiction. *See Ruble v. Ream*, 2003 WL 22532858 (Ohio App. Dist. 4 Oct. 29, 2003) ("*Vaccariello* did not address whether [Ohio Revised Code §] 2305.19 saves a standard civil suit that is originally filed in a foreign jurisdiction [and dismissed for lack of personal jurisdiction]. Thus, we do not agree . . . that *Vaccariello* effectively overruled *Howard*.").

In this case, the putative class action was commenced outside of Ohio and never proceeded to the class certification phase as it was dismissed for lack of personal jurisdiction by the MDL court. As such, the Court does not find this case falls within *Vaccariello*'s narrow holding preserving individual class members claims upon non-certification of the class. The Court instead will follow the Supreme Court of Ohio's "unambiguous holding that the savings statute is not to be applied to protect actions originally filed in other states" and the Court therefore refuses to apply Ohio's saving statute to this action. *Monroe v. Stop-N-Go Food Stores, Inc.*, 91 Ohio App. 3d 186, 189 (Ohio App. Dist. 2 1993) (pursuant to *Howard*, refusing to apply Ohio's savings statute to action originally commenced in foreign state).

## IV. CONCLUSION

As previously mentioned, the procedural posture of this case is unusual. The case was originally filed by Plaintiffs in December 2006 in Wisconsin state court. It was then removed to the United States District Court for the Western District of Wisconsin, and then the action in the Western District of Wisconsin was later consolidated into the MDL occurring in Nevada. On March 9, 2009, the MDL court in the United States District Court for the District of Nevada dismissed AEP and AEPES from the Wisconsin Action for want of personal jurisdiction. That this case is unusual, however, does not warrant departure from the provisions of Ohio's statutes of limitations. This Complaint was filed in the United States District Court for the Southern District of Ohio on March 25, 2009, more than six years after the Complaint states the alleged statutory violation ended on October 31, 2002, and outside of the six-year statute of limitations provided for

by the Ohio Revised Code. Neither the Wisconsin tolling statute nor the Ohio savings statute preserve Plaintiffs' action. Accordingly, the Court finds the Complaint was not timely filed.

## V. DISPOSITION

The Court **GRANTS** Defendants' Motion to Dismiss Complaint as Barred by Statute of Limitations (Doc. 4). The Clerk is instructed to **REMOVE** Document 4 from the pending motions list. Lastly, the Clerk shall enter judgment in favor of Defendant and against Plaintiff and terminate the case from the Court's docket.

**IT IS SO ORDERED.**

MICHAEL H. WATSON, JUDGE
UNITED STATES DISTRICT COURT